IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JEAN MCBRIDE,<br><br>      Plaintiff,<br>v.<br><br>BANK OF AMERICA,<br>      Defendant. | REPORT AND RECOMMENDATION<br><br>Case No. 2:10-cv-960<br><br>District Judge Dee Benson<br><br>Magistrate Judge Brooke Wells |

   This matter is before the Court on Defendant Bank of America's Motion for Summary Judgment[1] and Plaintiff's recently filed Motion for Preliminary Injunction.[2] Plaintiff, who is acting *pro se*, filed an opposition to the motion for summary judgment on November 22, 2011.[3] Thereafter, Defendant filed a reply brief.[4] The matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(b).[5] The court has carefully reviewed the written memoranda submitted by the parties. And, pursuant to civil rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the court has concluded that oral argument is not necessary and will determine the motion on the basis of the written memoranda.[6] As set forth below, the Court recommends that Defendant's motion be granted and Plaintiff's motion be denied or deemed moot.

---

[1] Docket no. 33.

[2] Docket no. 48.

[3] Docket no. 45.

[4] Docket no. 34.

[5] Docket no. 42. Pursuant to that provision, "a judge may also designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion."

[6] *See* DUCivR 7-1(f) (2010).

**BACKGROUND**

I. Procedural Background

Plaintiff, Jean McBride, filed this action in September of 2010.[7] On March 15, 2011, Plaintiff filed an Amended Complaint following the Court's denial without prejudice of Defendant Bank of America's original motion to dismiss.[8] Bank of America filed a motion to dismiss the Amended Complaint approximately a month later on April 13, 2011.[9] Judge Tena Campbell granted Defendant's motion, dismissing with prejudice all of Ms. McBride's claims except those involving the loan modification.[10]

In September 2011 this case was reassigned to Judge Dee Benson. Shortly thereafter, Defendant filed the currently pending Motion for Summary Judgment which was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(b) in November 2011.

Prior to referring this case, Judge Benson denied Plaintiff's Motion for Preliminary Injunction on October 26, 2011.[11] On December 21, 2011, Plaintiff filed another Motion for Preliminary Injunction that is also now currently pending before the Court.[12]

II. Factual Background

The underlying facts in this case are not in dispute. On approximately March 10, 2005, Ms. McBride signed a Note in favor of Countrywide Home Loans, Inc. in the amount of $175,480 to acquire property in Saratoga Springs, Utah.[13] At this same time Plaintiff also signed

---

[7] Docket no. 1.

[8] Docket nos. 19 and 21.

[9] Docket no. 13.

[10] Docket nos. 25 and 26.

[11] Docket no. 41.

[12] Docket no. 48.

[13] Declaration of Sophia Majeed ¶4 (Majeed Decl.) (filed under seal in support of Defendant's motion, docket no. 37).

a Deed of Trust securing the Note which identified Countrywide Home Loans Inc. as the lender, Chicago Title Insurance Company as Trustee, and MERS as Beneficiary and as nominee for lender and its successors and assigns.[14]

In 2008, Bank of America, the Defendant in this case, purchased Countrywide Home Loans Inc. Following this purchase, BAC Home Loan Servicing, Inc. (BAC), a wholly owned subsidiary of Bank of America, began servicing the loan.[15] On November 19, 2008 BAC received loan documents from Ms. McBride via facsimile documenting income for both her and Justin McBride.[16] On November 26th and December 8th BAC received additional documents via facsimile from Ms. McBride.[17] One of these states that "here is proof of income for Kelly" (Ms. McBride's husband) and the other outlines a payment that Ms. McBride had scheduled.

On December 15, 2008 BAC sent Ms. McBride notice of an offer to lower her interest rate to 8.75%.[18] The offer letter also stated that the reduction of Ms. McBride's interest rate did not affect payments that were past due and owing as of December 8, 2008. There is no evidence before the Court that Ms. McBride initially responded to this offer.

In March of 2009, a BAC representative spoke with Ms. McBride and informed her about the documents necessary to obtain a loan modification request. On April 24, 2009, Plaintiff called BAC and stated that the interest rate change was unacceptable and that she would not do anything until her loan was fixed alleging misrepresentations from the beginning of the loan.

---

[14] Majeed Decl. ¶ 5.

[15] BAC Home Loans Servicing LP was the servicing arm and wholly owned subsidiary of Bank of America. In July of 2011 BAC Home Loans Servicing LP was merged into Bank of America, N.A. and is now known as Bank of America, N.A., successor by merger to BAC Home Loan Servicing, LP.

[16] The fax cover sheet states that it is "okay to talk to my husband Kelly D. McBride about this loan." It also states that Kelly McBride's documents would be faxed later. *See* ex. C to Majeed Decl.

[17] *See id.* ex. D and E.

[18] *See id.* ex. F.

In June and July of 2009 Plaintiff and BAC exchanged letters and documents that BAC stated were necessary for a loan modification.  These included some bank statements, a hardship letter, social security benefits information, and an income and expense worksheet.  On July 14, 2009, Ms. Clark, the individual assigned to Ms. McBride's matter, left a message stating that proof of income was still required as well as the verification of some other information.  The following day, Plaintiff called BAC and hung up when a representative was not able to connect her with Ms. Clark.  There is no other record of Ms. McBride calling BAC or Ms. Clark.  On July 27, 2009, Ms. Clark left Ms. McBride a message stating that her file would be closed if she failed to respond.[19]

On July 28, 2009, BAC declined Ms. McBride's request for a loan modification based on a lack of response to its requests for additional information.  On July 31, 2009, Ms. Frias from BAC spoke with Ms. McBride.  Plaintiff stated she did not like the previous loan modification offer and asked that it be lower.  Ms. Frias informed Ms. McBride that without other changes in her financial situation a new lower loan modification was not possible.

On October 30, 2009, BAC sent Ms. McBride a letter advising her that her loan had been referred to foreclosure and advising her of options to avoid foreclosure.  According to Defendant, BAC tried to contact Ms. McBride approximately fifty times without success including sixteen messages left on her phone, none of which were returned.

In March and June of 2010, Ms. McBride filed for bankruptcy.  Both times her case was dismissed.  On September 29, 2010, Ms. McBride filed the instant lawsuit and she filed her Amended Complaint on March 15, 2011.

---

[19] *See* Majeed Decl. ¶19.

**ANALYSIS**

I. <u>Standard of Review</u>

Federal Rule of Civil Procedure 56 permits the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[20] The court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment."[21] "The mere existence of a scintilla of evidence in support of [a party's] position will be insufficient [to overcome a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [respective party]."[22]

The moving party, which is Bank of America, "has the initial burden of demonstrating the absence of any genuine issue of material fact to support the non-moving party's case." Once the moving party has met this burden, the burden then shifts back to the nonmoving party to show that there is a genuine issue of material fact. To discharge its burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" If the non-moving party fails to meet this burden with respect to any essential element of its case on which it bears the burden of proof at trial, then the moving party is entitled to summary judgment because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." The court considers

---

[20] Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Alder v. Wal-Mart Sotres, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[21] *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).

[22] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see also Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1175 (10th Cir. 1999) ("A mere scintilla of evidence supporting the nonmoving party's theory does not create a genuine issue of material fact.").

the "evidence in the light most favorable to the non-moving party, drawing all reasonable inferences from the available underlying facts."

II. Defendant's Motion for Summary Judgment Should be Granted

Defendant asserts that BAC offered Plaintiff a loan modification in good faith, but Ms. McBride refused it because it was not good enough and Defendant had no duty to offer Plaintiff a loan modification exactly to her liking. Defendant next asserts that Plaintiff cannot identify the existence of any valid contract that Defendant somehow breached for a lack of good faith or fair dealing.[23] Next, Defendant argues that the Home Affordable Modification Program (HAMP) does not provide a basis for Plaintiff's claims. HAMP is a voluntary program for mortgage service providers and they have "discretion in determining who is eligible."[24] In short, Congress did not create an entitlement or protected property interest in HAMP and therefore, Plaintiff cannot require Defendant to make a particular loan modification under HAMP.[25]

In opposition, Ms. McBride argues that her "material disputed fact is that, is BAC the true owner of the Note or just the servicer (debt collector)?"[26] In support Ms. McBride claims that when her note was sold "in the pooling and servicing agreement [Defendants] got their money, they were paid in full and I did not get my property. I did not get my property and that is my Damages. This is Mortgage origination fraud, assignment fraud, securities fraud and unlawful debt collection."[27]

---

[23] *See Bennett v. Jones Waldo, Holbrook & McDonough*, 2003 UT 9, ¶34, 70 P.3d 17 (concluding that there was no support for a breach of contract cause of action because no valid and enforceable contract existed at the relevant time frame)

[24] *Huxtable et al. v. Geithner*, 2010 U.S. Dist. Lexis 91382 *6 (S.D.Cal. Sept. 2, 2010); *see also Williams v. Geithner*, 2009 WL 3757380 (D.Minn. Nov. 9, 2009).

[25] *See id.*

[26] Op. p. 1, docket no. 45.

[27] *Id.* at p. 1-2.

Next, Ms. McBride alleges that Bank of America and BAC were not legally operating in the State of Utah and the trustee, ReconTrust, is not qualified to act as a trustee under Utah law.

Third, Plaintiff argues that the offer she received for a loan modification from Defendant was not a "true Loan Modification."[28] As such, Defendant failed to follow the law and engaged in fraud and predatory lending practices.

Finally, it appears that Plaintiff raises arguments regarding splitting the note where a servicer does not have the rights of a lender and once the property is sold a seller forever loses control of the asset.[29]

The Court is not persuaded by Plaintiff's arguments. First, Ms. McBride's claims of fraud fail to meet the requisite particularity requirement found in Rule 9(b).[30] In cases involving allegations of fraud plaintiffs must "state with particularity the circumstances constituting fraud or mistake."[31] To satisfy this requirement, a complaint must "describe the specific representations which are allegedly fraudulent, the particular defendant who made the misrepresentations, and the falsity of the representations."[32] Ms. McBride's claims for fraud fail to do so.

Second, there is nothing in the record to support Plaintiff's allegations that Bank of America, BAC and ReconTrust violated Utah law. The Utah Code does not require that the

---

[28] *Id.* at p. 2.

[29] *See id.* at p. 4-6.

[30] Fed. R. Civ. P. 9(b).

[31] *Id.*

[32] *Armani v. Maxim Healthcare Servs. Inc.*, 53 F. Supp.2d 1120, 1130 (D. Colo. 1999).

substitution of Trustee be filed prior to filing the Notice of Default and any assertions made by Plaintiff to the contrary are incorrect.[33]

Third, as set forth by recent case law,[34] and as supported by the language found in the statue behind HAMP,[35] there is no protected property interest in HAMP.  Therefore, Plaintiff cannot require Defendant to make a particular loan modification nor can Plaintiff claim that the proposed loan modification was not "true."  Defendant had discretion in determining Plaintiff's eligibility for a loan modification and Plaintiff does not have a cause of action just because she did not like the proposed modification,[36]

Finally, this Court has already rejected split-the-note arguments and there is nothing before the Court to persuade it to depart from that precedent.[37]

III. Plaintiff's Motion for Preliminary Injunction Should be Denied

On December 21, 2011, Plaintiff filed another Motion for Preliminary Injunction.[38] Having reviewed this motion, the Court determines that like the previous motion, Plaintiff has failed to satisfy the pleading requirements and substantive grounds for injunctive relief as set

---

[33] *See* Utah Code Ann. § 57-1-21.5 ("[t]he following duties of the trustee may not be delegated: (a) the preparation and execution of: (i) the notice of default and election to sell; (ii) the cancellation of notice of default and election to sell; (iii) the notice of sale; and (iv) the trustee's deed.").

[34] *See Huxtable*, 2010 U.S. Dist. Lexis 91382 *6 (S.D.Cal. Sept. 2, 2010); *Williams*, 2009 WL 3757380 (D.Minn. Nov. 9, 2009).

[35] *See* 12 U.S.C. § 5219(c) ("the Secretary shall consent, *where appropriate*, and considering net present value to the taxpayer, to reasonable requests for loss mitigation measures") (emphasis added); *Williams* 2009 WL 3757380 * ("the statue does not create an absolute duty on the part of the Secretary to consent to loan modifications").

[36] *See Huxtable*, 2010 U.S. Dist. Lexis 91382 *6-7.

[37] *See Rodeback v. Utah Fin.*, Case No. 1:09-cv-00134, 2010 U.S. Dist. LEXIS 69821, *9 (D. Utah July 13, 2010) ("Utah Code section 57-1-35 makes it impossible to split the note from the security interest. Therefore, the Trust Deed is valid even if the note changed ownership."); *Strupat v. Aurora Loan Servs. LLC*, Case No. 2:11-cv-00279, 2011 U.S. Dist. LEXIS 617721 (D. Utah June 9, 2011) ("courts have repeatedly held that the mortgage follows the note and have rejected the 'split the note' theory").

[38] Docket no. 48.

forth in Rule 65.[39] Consequently, this motion should be denied or deemed moot following the granting of Defendant's Motion for Summary Judgment.

## **RECOMMENDATION**

For the foregoing reasons, the Court HEREBY RECOMMENDS that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Preliminary Injunction be DENIED or DEEMED MOOT.

Copies of the foregoing report and recommendation are being mailed to all parties who are hereby notified of their right to object. Any objection must be filed within 14 days after being served with a copy.[40] Failure to object may constitute a waiver of objections upon subsequent review.

DATED this 4 January 2012.

Brooke C. Wells
United States Magistrate Judge

---

[39] Fed. R. Civ. P. 65.

[40] *See* Fed. R. Civ. P. 72(b)(2).